DONALD LEROY CHAMBERLAIN, peticionario, *v.* GERARDO DELGADO, JEFE DE LA PENITENCIARÍA ESTATAL DE PUERTO RICO, recurrido.

Número 953 (147).

*Sometido:* 26 de septiembre de 1960. *Resuelto:* 25 de octubre de 1960.

*Raúl A. Feliciano,* abogado del peticionario.

El Juez Asociado Señor Saldaña emitió la opinión del Tribunal.

Estando el Tribunal Supremo en sesión y hábiles todos sus jueces, Donald Leroy Chamberlain presentó una petición de hábeas corpus ante el juez ponente individualmente. [1] Alegó que la sentencia de cinco a doce años de presidio impuéstale el 8 de mayo de 1959 por el Tribunal Superior, Sala de San Juan, en las causas criminales G-58-614, G-58-615 y M-58-500, es ilegal y consecuentemente es también ilegal su reclusión en el Presidio Estatal de Puerto Rico. Adujo los siguientes fundamentos que convienen copiar aquí a la letra:

"3—Que en el día 30 de—agosto—de 1959, o sea, el día siguiente a su arresto, los dos (2) principales periódicos de Puerto Rico, 'El Mundo' y 'El Imparcial' publicaron a grandes titulares la noticia de su arresto y las noticias posteriores en días subsiguientes hasta la fecha de la celebración del juicio.

"4—Que en la forma en que fueron publicadas estas noticias por los periódicos 'El Mundo' y 'El Imparcial' resultaron en publicidad altamente adversa y lesiva al derecho del acusado a un juicio justo e imparcial.

"5—Que dicho juicio se celebró con posterioridad a la publicidad adversa que recibiera el demandante, pero en una fecha que todavía quedaba afectado su caso por la publicidad adversa privándole de un juicio justo e imparcial.

[1] La petición se radicó el 9 de septiembre de 1960. Como es sabido, los magistrados señores Pérez Pimentel y Belaval dedicaron todo su tiempo a los exámenes de reválida que empezaron a celebrarse el pasado 8 de septiembre y terminaron el 28 de ese mes. Sólo por esta razón han estado impedidos de participar en la labor judicial del Tribunal Supremo durante el período antes mencionado.

"6—Que el efecto de esta publicidad adversa al derecho a un juicio justo e imparcial del peticionario, afectó notablemente tanto el resultado del juicio, así como influenció en la severidad de la sentencia. Esto se debió a que el juicio comenzó a ventilarse en el Tribunal Superior de San Juan, el día 13 de abril —de 1959, o sea, —240— días después del arresto del acusado.

"7—Que en el caso criminal mencionado en el Párrafo Primero no se subsanó el efecto de la excesiva publicidad adversa que recibiera el acusado poco antes de entrar al juicio, ya que no hubo cambio del sitio del juicio, ni tampoco se dieron instrucciones por el Juez que procedió (sic) la vista en el caso que subsanaran en forma substancial el grave daño que se le hizo con la publicidad adversa al acusado, ni se suspendió la fecha de la vista del juicio en forma tal que subsanara el efecto de la publicidad adversa.

"8—El periódico 'El Mundo' movido por un aparente celo periodístico imputó al acusado el robo del Banco Nova Scotia que había ocurrido poco antes del acusado cometer el delito que se le imputó. A esos efectos véase la caricatura de 'El Mundo' del día 30 de agosto de 1959, publicada en primera plana con el siguiente calce: FILARDI ACERTÓ:

"Ahora puede revelarse que fue Carmelo Filardi que hizo el dibujo del atracador del Banco Nova Scotia. Este dibujo fue hecho a petición del Departamento de la Policía. Si el lector compara el dibujo con la foto arriba se dará cuenta de que es un acierto de Filardi.

"La foto a que hace referencia el calce de la caricatura es una fotografía del peticionario acusado de tentativa de robo y otros delitos Donald Leroy Chamberlain.

"En la edición correspondiente al miércoles 3 de septiembre de 1958, el periódico 'El Mundo' publicó el siguiente título seguido de una información: 'A CHAMBERLAIN ESPERAN CONECTARLO CON EL NOVA SCOTIA.'

"La información contenida tanto en estos ejemplos citados del periódico 'El Mundo' como en otros órganos de información de todo el país fue altamente perjudicial a los derechos del acusado a un juicio justo e imparcial, ya que el acusado demandante no ha sido acusado nunca y probablemente no lo será del asalto al Banco Nova Scotia.

"9—Que además de los fundamentos aducidos en los párrafos anteriores el acusado demandante no tuvo la debida asistencia de abogado que garantiza la Constitución de los Estados

Unidos de América y la Constitución de Puerto Rico, ya que no hicieron las gestiones necesarias en ley sus abogados para evitar que esa publicidad adversa le afectara en la forma que lo afectó, ya que el juicio se celebró en la ciudad de San Juan, Puerto Rico, a los—240—días después del arresto y muy poco antes como se verá por las informaciones de los periódicos todavía esa publicidad adversa surtía su efecto privando al acusado demandante un juicio justo e imparcial.

"10—Que de la lista general definitiva que prepararon los Comisionados de Jurado para seleccionar definitivamente los jurados que actuaron en el Tribunal Superior, Sala de San Juan, para la fecha de la celebración del juicio del Peticionario, no se incluyeron naturales de Estados Unidos residentes en Puerto Rico, en forma arbitraria e injusta para los derechos del presente peticionario. Que siendo los continentales ciudadanos americanos y residentes en Puerto Rico, y habiendo de ellos un gran número de donde se pueden escoger en Puerto Rico, y conociendo muchos de ellos el idioma español, no fueron ni siquiera considerados para formar parte del jurado del Tribunal Superior, Sala de San Juan.

"11—Que esta actuación del Comisionado de Jurados perjudica substancialmente los derechos del acusado, todo ello en violación de la Constitución de Puerto Rico y de la de Estados Unidos de América.

"12—Que en lo relativo a la cuestión de publicidad planteada, en el caso de Pueblo vs. Fournier 77 D.P.R.—222—se discute la cuestión pero dicho caso es distinguible del presente porque los hechos son diferentes y a nuestro juicio el punto de publicidad levantado en el caso de Pueblo v. Fournier, supra, que resultó par a base de un dictum ya que no se tomó en consideración para decidir dicho caso."

Como se ve, esta petición de hábeas corpus no contiene alegación alguna que justifique dirigirse a un magistrado específico del Tribunal Supremo para obtener el auto, mientras dicho tribunal se halla reunido en sesión judicial ordinaria. No existe ninguna circunstancia especial o excepcional que requiera la intervención inmediata de uno de los jueces del Tribunal Supremo en este procedimiento de hábeas corpus. En cambio, surge afirmativamente de la petición que se trata de un caso corriente, que fácilmente puede acu-

dirse al Tribunal Supremo y que sus siete jueces deben intervenir a la vez en la forma asociada en que regularmente deciden todos los recursos. Por tanto, luego de analizar las disposiciones de la ley aplicables, el juez aquí ponente llegó a la conclusión de que debía referirse la solicitud de hábeas corpus al Tribunal Supremo constituído en pleno. Así lo hizo y, con fecha 15 de septiembre de 1960, el Tribunal dictó la siguiente resolución en el caso " . . . considerando que no se aducen fundamentos suficientes y adecuados para que, en el ejercicio de nuestra jurisdicción original, procedamos a conocer en primera instancia del caso, fallamos que debemos declarar y declaramos no haber lugar al recurso interpuesto." Como este fallo fue unánime, es obvio que el juez aquí ponente participó en la consideración del recurso por el tribunal colegiado y que concurrió con los demás magistrados al rechazarse el recurso interpuesto. No obstante, en una moción que dirige al juez ponente personalmente, el peticionario ahora insiste en que " . . . conforme al Código de Enjuiciamiento Criminal en vigor en Puerto Rico . . . una vez se presenta una solicitud interesando el auto de hábeas corpus, el tribunal o juez competente para otorgarlo si resultare que debe expedirse dicho auto, *tendrá* que otorgarlo sin demora." De ahí concluye que, habiendo sido presentado el recurso de hábeas corpus ante un juez específico del Tribunal Supremo, éste tenía " . . . el deber ministerial de expedir el auto si resultare que debe expedirse." En otras palabras, sostiene que el juez aquí ponente viene obligado a tomar acción en el caso bien sea denegando o expidiendo el auto, por lo cual en su súplica termina diciendo " . . . el peticionario respetuosamente solicita de usted se sirva dictar una resolución en los términos que estime conveniente para el bien de la justicia, de modo que el peticionario pueda tomar la acción que . . . proceda para hacer valer su derecho." Además, en una moción dirigida al Tribunal, el peticionario alega que nuestra resolución de fecha 15 de septiembre de 1960, por la cual declaramos no haber

lugar al recurso interpuesto, es nula porque " . . . habiéndose radicado este recurso en el Tribunal Supremo pero ante el Hon. Juez Lino Saldaña, no tiene autoridad en ley el Tribunal Supremo en pleno para declarar sin lugar el recurso" y porque " . . . el peticionario no desea someterse a la jurisdicción del Tribunal Supremo en pleno y sí a la del magistrado a quien se solicitara la expedición del auto."

■ Puntualicemos la cuestión planteada para así discurrir sin confusiones. El vigente Código de Enjuiciamiento Criminal, en su artículo 471, consigna qué tribunales y qué jueces están autorizados a expedir el auto de hábeas corpus. 34 L.P.R.A. § 1743. Es cosa bien sabida que tanto el Tribunal Supremo en pleno como cualquiera de sus magistrados puede, según el citado artículo, conceder el auto de hábeas corpus a solicitud hecha por una persona que alegue hallarse privada ilegalmente de su libertad en Puerto Rico. (²) Por otro lado, el artículo 472 de ese Código añade que "Presentada una solicitud interesando el auto de hábeas corpus, el tribunal o juez competente para otorgarlo, si resultare que debe expedirse dicho auto, tendrá que otorgarlo sin demora." 34 L.P.R.A. § 1744. Así pues, el punto suscitado por el peticionario es el siguiente: ¿impide el artículo 472 que se remita al Tribunal Supremo en pleno una petición de hábeas corpus presentada a uno de sus magistrados? La contención del peticionario es que sí. Sostiene que en tal caso el magistrado del Tribunal Supremo a quien se dirige la petición siempre viene obligado a decidir individualmente el recurso

(²) La Ley de Relaciones Federales con Puerto Rico también dispone que "El Tribunal Supremo y las Cortes de Distrito de Puerto Rico y los respectivos Jueces de los mismos podrán conceder autos de hábeas corpus en todos los casos en que dichos autos puedan concederse por los jueces de las Cortes de Distrito de los Estados Unidos. . ." 64 Stat. 319; 1-4 L.P.R.A. pág. 178. Esta disposición corresponde al art. 48 de la Carta Orgánica de 1917, 39 Stat. 967, según enmendada posteriormente. Véase 48 U.S.C.A. § 872. La facultad del Tribunal Supremo y de cualquiera de sus magistrados para conocer en primera instancia de recursos de hábeas corpus fue consagrada por la Sección 5 del Artículo V de la Constitución del Estado Libre Asociado. 1-4 L.P.R.A. pág. 206. Véase también la sección 7 de la Ley de la Judicatura de 1952. 4 L.P.R.A. § 35.

bien sea rechazándolo o expidiendo el auto. A nuestro juicio esta contención del peticionario está totalmente desprovista de méritos.

 Nuestra Constitución y nuestras leyes confieren jurisdicción al Tribunal Supremo y a cada uno de sus magistrados para conocer en primera instancia de una petición de hábeas corpus con el único fin de otorgar la más amplia protección posible a toda persona que sea detenida o encarcelada ilegalmente en Puerto Rico. Esto no quiere decir que valiéndose de esa jurisdicción pueda obligarse caprichosamente al Tribunal o a uno de sus magistrados a conocer de un recurso original de hábeas corpus. Porque, no cabe dudarlo, es imprescindible reducir al mínimo el número de casos en que el Tribunal Supremo interviene como corte de primera instancia. Su función esencial en la administración de la justicia en Puerto Rico es servir como órgano de revisión o de apelación. Por eso, para desempeñar adecuadamente esa labor, tanto en su aspecto cuantitativo como en su exigencia de calidad, el Tribunal Supremo se ha visto obligado a limitar estrictamente el ejercicio de su jurisdicción original. Específicamente ha sentado la regla de que no usará de su facultad para intervenir originalmente en procedimientos de hábeas corpus " . . . a menos que las circunstancias sean tales que hagan necesaria nuestra intervención." O sea, a menos que los derechos del peticionario no puedan ser protegidos en forma adecuada mediante la presentación de una solicitud de hábeas corpus ante otro tribunal competente, el Tribunal Supremo siempre rechaza el recurso original con un simple "no ha lugar". Véase por ejemplo *Burgos* v. *Tarrido*, 76 D.P.R. 256 (1954). Cf. además *Jiménez* v. *Jones*, 195 F.2d 159 (1º Cir. 1952) y *Palou Márquez* v. *Ramírez*, 264 F.2d 61 (1º Cir. 1959).

Claro está, nada de lo dispuesto en el artículo 472 del Código de Enjuiciamiento Criminal impide la adopción y aplicación de esta norma procesal para disponer de peticiones originales de hábeas corpus que se presenten ante el

Tribunal Supremo en pleno. Aunque dicho artículo dispone que el tribunal o juez competente *"tendrá que otorgar* [el auto] *sin demora,"* no es menos cierto que esta obligación sólo existe *". . . si resultare que debe expedirse dicho auto."* La jurisdicción original en casos de hábeas corpus no constituye una camisa de fuerza, sino un medio de hacer justicia en casos que presenten circunstancias extraordinarias. Lógicamente debe regir idéntico principio cuando se trata de la jurisdicción sobre hábeas corpus que la ley confiere individualmente a los magistrados del Tribunal. Así lo reconoce nuestra jurisprudencia firme y reiterada. Veamos algunos ejemplos.

Hace más de medio siglo, en *Ex parte Aybar*, 14 D.P.R. 565 (1908), el Tribunal Supremo resolvió que una solicitud de hábeas corpus presentada a uno de sus magistrados podía ser remitida por éste para su resolución al juez del distrito donde el peticionario se hallaba encarcelado. Aunque allí se expidió el auto para que la vista se celebrara ante otro tribunal, se estableció el principio básico de que en esta materia el magistrado debe siempre ejercer " . . . una discreción no arbitraria sino sana y prudente que realice los fines de la justicia sin quebrantos para nadie." Por eso declaramos que, estando el peticionario en ese caso preso en Mayagüez, era válida la remisión de la solicitud de hábeas corpus al juez de este distrito ya que ". . . no irrogaba perjuicio al acusado quien por el contrario tenía un recurso más de apelación en caso denegado." Posteriormente en *Ex parte Guido Carreras y El Pueblo*, 39 D.P.R. 488 (1929), reiteramos esta lógica y sabia doctrina al declarar formalmente "Hemos llegado más y más al convencimiento de que siempre que se pueda obtener la intervención de una corte de distrito, los letrados deben abstenerse de radicar peticiones de hábeas corpus ante los magistrados de esta corte, ora individual o colectivamente. No sólo están los jueces de las cortes de distrito en mejor posición de citar testigos y de oírlos, si que también las decisiones que finalmente emitan pueden

ser revisadas por este tribunal en pleno. Es mucho más conveniente para la jurisprudencia de esta corte que tengamos la cooperación de todos los jueces que la componen, y cualquier duda que tuviera alguno de ellos puede frecuentemente ser resuelta." (Pág. 489–90.) Obsérvese que al hacer estas declaraciones el Tribunal se refería precisamente a una petición original de hábeas corpus presentada ante uno de sus magistrados. Por eso, con plena conciencia de la significación que esto tiene, el Tribunal constituído en pleno adoptó e hizo suya la norma sentada por el Juez Presidente Sr. Del Toro en el caso de *Ex parte Álvaro Salvá*, resuelto el 15 de marzo de 1929: "Claro es que hay casos excepcionales y que para algo se otorgó el poder a cada juez, pero deseamos llamar la atención de la abogacía sobre el particular. Si existe alguna circunstancia que requiera la intervención inmediata de uno de los jueces de la Corte Suprema, a él debe acudirse, pero en casos corrientes debería procederse de tal modo que quedaran libres todos los jueces del tribunal para intervenir en la apelación si hubiere necesidad de establecerla."[3]

Estos principios se reafirmaron en *Ex parte Sánchez*, 45 D.P.R. 40 (1933). Por voz del Juez Asociado Sr. Córdova Dávila, el Tribunal allí declaró sin lugar una solicitud interesando la expedición de un auto de hábeas corpus y expresó lo siguiente: "Deseamos hacer constar que esta corte no usará su discreción para ejercer la jurisdicción original que le confiere la ley, a menos que las circunstancias sean tales que hagan necesaria nuestra intervención." Es decir, lo que antes era una admonición o norma de "buena práctica" ahora se transforma en una regla perentoria y coercitiva que, por implicación necesaria, se refiere tanto al pleno del Tribunal como a cada uno de sus magistrados. Como ya se había expedido el auto solicitado por el peticionario, el

---

[3] La opinión emitida por el Juez Presidente Sr. Del Toro en su carácter individual no ha sido publicada *in extenso*. Forma parte de los autos que en nuestra Secretaría llevan el número 3814 (Criminal) del año 1929. Cf. *Ex parte Salvá y El Pueblo*, 41 D.P.R. 27 (1930).

Tribunal consideró y resolvió el caso en sus méritos. No obstante, a partir de esta declaración terminante respecto al principio jurídico que debe seguirse en estos casos, la práctica constante del Tribunal Supremo ha sido la de rechazar las solicitudes de hábeas corpus cuando no se aducen razones adecuadas y suficientes para invocar su jurisdicción original. Esto no constituye nada nuevo en verdad para los abogados que postulan en nuestro foro. Y ninguno de ellos tampoco ignora que, refiriéndose a esta práctica reiterada, la Corte de Apelaciones tiene expresamente declarado que "No hay duda que el Tribunal Supremo de Puerto Rico tiene plena autoridad para adoptar y aplicar tal regla procesal en la disposición de peticiones originales de hábeas corpus; esto no es distinto en sustancia de lo que ha hecho la Corte Suprema de los Estados Unidos." *Jiménez* v. *Jones*, supra, pág. 163.([4]) Asimismo, dejando a un lado las peticiones de hábeas corpus ante un magistrado en funciones de "juez de turno", la práctica de nuestro foro durante los últimos veinte años ha sido la de abstenerse en casos corrientes de radicar peticiones de hábeas corpus dirigidas a uno de los magistrados del Tribunal Supremo individualmente. Como se deduce de lo expuesto anteriormente, esto obedece a las pautas sentadas por el Tribunal Supremo en sus decisiones. Hay una presunción lógica de que cada magistrado, al ejercer su autoridad individual para intervenir en procedimientos de hábeas corpus, seguirá las pautas fijadas por el Tribunal.

 Por lo tanto, un magistrado del Tribunal Supremo a quien se dirige individualmente una petición de hábeas

---

([4]) A tenor de lo dispuesto en la Regla 31 (5) del Reglamento de la Corte Suprema de los Estados Unidos, la solicitud original de hábeas corpus que se presente ante dicha Corte debe exponer las razones por las cuales el peticionario no acudió primero a la Corte de Distrito federal. Además el caso tiene que ser excepcional para que pueda recurrirse en primera instancia a la Corte Suprema. Cf. *Ex parte Hudgings*, 249 U.S. 378 (1919) y *Ex parte Grossman*, 267 U.S. 87 (1925) con *Ex parte Abernathy*, 320 U.S. 219 (1943). Reglas similares existen en varias Cortes de Apelaciones. Véase por ejemplo *In re Gersing*, 145 F.2d 481 (D.C. Cir. 1944).

corpus no viene obligado necesariamente a resolverla por sí solo, admitiendo o denegando el recurso. Obviamente, si no se demuestra que existen razones adecuadas y suficientes para no haber radicado el recurso en primera instancia ante el Tribunal Superior, puede así indicarlo y limitar su decisión a declarar "no ha lugar" a la expedición del auto de hábeas corpus. En tal caso su actuación equivale a remitir el peticionario al remedio que tiene ante el Tribunal Superior. Es decir, indica al peticionario que debe acudir primero ante un juez del Tribunal Superior y allí plantear su petición de hábeas corpus. En el ejercicio de su discreción, puede también referir la petición de hábeas corpus al Tribunal Supremo constituído en pleno para que éste tome la determinación que estime procedente, siempre que el Tribunal esté en sesión y que sus jueces colectivamente acepten intervenir sin demora en el caso. Casi huelga decir que en tal caso la petición de hábeas corpus que se dirigió a uno de sus magistrados individualmente, puede considerarse como si hubiese sido dirigida al pleno del Tribunal. Así se ha hecho en el pasado, sin que nadie jamás haya puesto en duda la autoridad del Tribunal para hacerlo. Cf. *Espinosa* v. *Ramírez*, 71 D.P.R. 10, 14 (1950). Y la práctica seguida en otros tribunales de última instancia es parecida a la nuestra. En *Ex parte Clarke*, 100 U.S. 399, 403 (1879) la Corte Suprema de los Estados Unidos resolvió una cuestión idéntica a la que ahora consideramos. Basándose en la práctica tradicional de los magistrados ingleses, dicha Corte determinó que podía considerar en pleno una petición de hábeas corpus dirigida a uno de sus jueces individualmente. Desde entonces, según señalan Stern y Grossman " . . . cuando se presenta una solicitud [de hábeas corpus] dirigida individualmente a uno de los magistrados de la Corte Suprema, la práctica usual es que él la remita a la Corte en pleno." *Supreme Court Practice* (2ª ed. 1954) 284. Cf. Hart y Wechsler, *The Federal Courts and the Federal System* (1953) 1243–1247.

Con ello no se causa ningún daño al peticionario. En cambio se evitan muchos y serios inconvenientes. En primer lugar, si el juez a quien se dirige la petición interviene en el procedimiento de hábeas corpus en su carácter individual, tendrá que inhibirse luego en cualquier trámite posterior, bien sea en apelación o al radicarse la misma petición ante el Tribunal Supremo.(5) Semejante inhibición forzosa redundaría, sin duda, en grave perjuicio y menoscabo de las funciones apelativas del Tribunal. En segundo lugar, resulta incompatible con el más elemental principio de organización judicial que se permita a un peticionario, a su gusto y capricho, "escoger" a cualquier magistrado del Tribunal Supremo para que éste oiga y resuelva un recurso de hábeas corpus como juez de primera instancia. ¿Acaso podrían radicarse nuevas y sucesivas peticiones de hábeas corpus ante cada uno de los siete jueces que integran el Tribunal? No se concibe justificación para una situación tan indeseable y peligrosa. En tercer lugar, si la petición de hábeas corpus plantea cuestiones meritorias, lo normal y adecuado es que ésta se someta a la decisión del Tribunal Supremo constituído en pleno. En principio, la existencia de un tribunal colegiado de última instancia sólo se justifica porque emite sentencias que son *colectivas;* esto equivale a decir: que se obtienen mediante un proceso de deliberación y de discusión entre varios jueces y que reflejan principios jurídicos cuya sabiduría es superior a la que cada juez aisladamente podría alcanzar mediante su esfuerzo individual. Para ese fin se creó y existe el Tribunal Supremo de Puerto Rico. Claro está que cada uno de sus magistrados sólo debe atender estas funciones colectivas, a menos que sea necesaria e inaplazable

---

(5) La decisión de cualquier magistrado en un recurso de hábeas corpus, si el auto ha sido expedido y diligenciado, es apelable ante el Tribunal Supremo a instancias de cualquiera de las partes que resulte agraviada. *Ex parte Lastra,* 56 D.P.R. 559 (1940) y *Espinosa* v. *Ramírez,* 71 D.P.R. 10 (1950). Por otra parte, como es bien sabido, una resolución desestimando la petición de hábeas corpus no impide al peticionario radicar otra solicitud por los mismos fundamentos ante cualquier juez o tribunal competente. *Ramos* v. *Rivera,* 68 D.P.R. 548 (1948).

su intervención individual para proteger los derechos de una persona ilegalmente detenida o encarcelada. (⁶) En el caso de autos, como ya se advirtió antes, surge afirmativamente de la petición que se trata de un caso ordinario; que, sin perjuicios o quebrantos para sus derechos, el peticionario puede acudir prontamente al Tribunal Supremo; y que nada impide a los siete jueces de esta corte intervenir conjuntamente en el caso como es lo normal en todo tribunal colegiado.

■ Consecuencias de todo esto: *primero*, que se ajusta a las normas jurídicas vigentes el haber remitido al Tribunal en pleno la petición de hábeas corpus presentada el día 9 de septiembre de 1960; y *segundo*, que es incuestionable nuestra facultad para considerar y resolver el

---

(⁶) Aplicando disposiciones del Código Judicial federal que son muy parecidas a las nuestras, la Corte Suprema de los Estados Unidos y varias Cortes de Apelaciones han llegado a conclusiones similares. Véanse 28 U.S.C. (1940) § 455 y 28 U.S.C. §§ 2241 (*b*) y 2243; *Ex parte Clarke*, 100 U.S. 399, 403 (1879); *Ex parte Jefferson*, 106 F.2d 471 (9º Cir.); *Sweetney* v. *Johnston*, 121 F.2d 445 (9º Cir.); *United States ex rel. Bernstein* v. *Hill*, 71 F.2d 159 (3º Cir.); *Burall* v. *Johnston*, 146 F.2d 230 (9º Cir.); *Brosius* v. *Botkin*, 110 F.2d 49 (D.C. Cir.). Cf. *Burall* v. *Johnston*, 53 F. Supp. 126; *Bowen* v. *Johnston*, 55 F. Supp. 340 y *Remas* v. *Squier*, 56 F. Supp. 344. Si analizamos esta jurisprudencia, veremos que sostiene el siguiente principio: un magistrado de la Corte Suprema de los Estados Unidos o de una Corte de Apelaciones a quien se dirige una petición de hábeas corpus en su carácter individual, puede limitarse en el ejercicio de su discreción a referir la petición a la corte en pleno o a una corte de primera instancia cuando no existen circunstancias especiales que exijan su intervención inmediata. Por lo demás, se ha aplicado la misma norma cuando se trata de una solicitud de fianza dirigida a un magistrado de la Corte Suprema de los Estados Unidos. Por ejemplo, según se indica en Robertson y Kirkham, *Jurisdiction of the Supreme Court of the United States* (ed. Wolfson y Kurland, 1951), el Juez Asociado Sr. Murphy refirió a la corte en pleno la solicitud de fianza pesentada ante él en el caso de *United States ex rel. Doss* v. *Lindsley*, No. 470, O.T. 1945 (§ 442, pág. 920, escolio 7). En 1951 el Juez Asociado Sr. Douglas hizo lo mismo con otra solicitud de fianza y, en la alternativa, de hábeas corpus como remedio provisional. Véase *Stack* v. *Boyle*, 342 U.S. 1, 4 (1951). Esto es así a pesar de que cada uno de los jueces de la Corte Suprema de los Estados Unidos tiene facultad para admitir fianza mientras está pendiente un recurso de apelación o de certiorari en un caso criminal. Cf. *United States ex rel. Norris* v. *Swope*, 96 L. ed. (Appendix) 1382; *D'Aquino* v. *United States*, 180 F.2d 271; y los casos citados en 1 L. ed. 2d 1564–1580.

recurso como si dicha petición hubiese sido dirigida a todo el Tribunal y no a uno de sus magistrados personalmente. Por otra parte, a poco que se examine la referida petición de hábeas corpus, se comprobará fácilmente que ni en forma expresa ni en forma implícita aduce fundamentos adecuados para que, en el ejercicio de nuestra jurisdicción original, procedamos a conocer en primera instancia del caso. Así pues, es enteramente correcta la resolución que dictamos el 15 de septiembre de 1960, por la cual declaramos no haber lugar al recurso interpuesto e indicamos al peticionario que debía recurrir al Tribunal Superior.

██ Ahora bien, posteriormente—en dos mociones que presentó el 16 y el 22 de septiembre de 1960—el abogado del peticionario alegó un hecho adicional de importancia que no se hizo constar en la solicitud original de hábeas corpus. Por primera vez se aduce en estas mociones lo siguiente: " . . . *estando los casos criminales G 58–614, G 58–615 y M 58–500 en proceso de apelación para ante el Hon. Tribunal Supremo*, es el Tibunal Supremo o el Juez a quien se dirige la petición los que tienen jurisdicción exclusiva para expedir el auto de hábeas corpus, si resultare que debe expedirse el auto."[7] (Bastardillas nuestras.) Es cosa bien sabida que toda petición de hábeas corpus debe estar firmada y jurada " . . . por la persona a cuyo favor se hace o por otra a nombre de aquella." Artículo 470 del Código de Enjuiciamiento Criminal, 1935; 34 L.P.R.A. § 1742. Véanse *Ex parte Cintrón*, 5 D.P.R. 90 (1904) ; *Ex parte Delgado*, 12 D.P.R. 269 (1907). Cf. *Fagot y El Pueblo*, 33 D.P.R. 591 (1924). De ahí que, en rigor, no deba enmendarse la petición de hábeas corpus jurada por el peticionario Chamberlain mediante una simple moción que su abogado firma

---

[7] Obsérvese que el escrito de apelación en los referidos casos criminales tiene que haberse presentado ante el Tribunal Superior. Además en nuestra Secretaría no hay constancia de que se haya perfeccionado la apelación interpuesta por Chamberlain en esas causas ciminales. Por tanto, es obvio que no podíamos tener conocimiento alguno de los hechos expuestos en las mociones fechadas 16 y 22 de septiembre de 1960.

sin más. No obstante, por la índole de la alegación, creemos que aquí debe hacerse caso omiso de esta cuestión y que toca al pleno del Tribunal considerar la petición de hábeas corpus así "enmendada". A ello pasamos a dar nuestra atención.

Aparentemente todas las cuestiones que plantea el peticionario en su solicitud enmendada pueden y deben plantearse en la apelación que él interpuso contra las sentencias dictadas en su contra, recurso que hoy día se encuentra pendiente ante este Tribunal Supremo. Nos parece indudable que, en ausencia de circunstancias extraordinarias, antes de recurrir al procedimiento de hábeas corpus que es una impugnación colateral de las sentencias dictadas en su contra, el preso debe agotar todos los remedios que estén a su alcance mediante una impugnación directa de dichas sentencias por vía de apelación. Véanse *Ex parte Bird*, 5 D.P.R. 247 (1904); *Ex parte Díaz*, 7 D.P.R. 153 (1904); *Sunal* v. *Large*, 332 U.S. 174 (1947); *Larson* v. *United States*, 275 F.2d 673 (5º Cir. 1960); y *Walker* v. *Chitty*, 112 F.2d 79 (9º Cir. 1940). Por otra parte, suponiendo que el peticionario pueda recurrir al hábeas corpus mientras está pendiente su apelación, no existe razón aparente para que el Tribunal Superior esté impedido de intervenir en el procedimiento luego de habérsele concedido permiso para ello por este Tribunal Supremo. Cf. *Ex-parte Hernández Laureano*, 54 D.P.R. 416 y 54 D.P.R. 495 (1939); *Fournier* v. *González*, 80 D.P.R. 262 (1958), 269 F.2d 26 (1º Cir. 1959); 39 C.J.S., *Habeas Corpus*, § 53. Compárese también, por analogía, la Regla 49.2 de las de Procedimiento Civil (1958), 7 Moore, Federal Practice, 2da ed., 334 y sigtes. No obstante, si miramos con suma liberalidad las alegaciones de hecho contenidas en la petición, quizás podríamos decir que hay en ellas un residuo de ambigüedad y de indeterminación respecto al punto de si existen circunstancias extraordinarias que permitan al peticionario recurrir al procedimiento de

hábeas corpus mientras se encuentra pendiente su apelación. Por lo demás, no conviene resolver estas dos cuestiones previas de derecho sobre la procedencia del recurso sin oir a las partes y sin tener la ayuda de sus alegatos. Nuestra jurisprudencia sobre esta materia dista mucho de trazar líneas precisas y, en todo caso, no hace un análisis detenido de los principios jurídicos aplicables.

Por consiguiente, *se dejará sin efecto nuestra resolución denegando el recurso y se celebrará una vista para oir al peticionario y al recurrido sobre las dos cuestiones previas de derecho antes indicadas, a saber:* (1) *si existen en este caso circunstancias extraordinarias que permitan al peticionario recurrir al procedimiento de hábeas corpus no obstante haber interpuesto recurso de apelación contra la sentencia cuya validez ataca en el hábeas corpus, y* (2) *en caso afirmativo, si existen razones que impidan al Tribunal Superior intervenir en el procedimiento de hábeas corpus luego de concedérsele permiso para ello por este Tribunal Supremo.*